[No. 23448. Department One. March 7, 1932.]

JAMES DONOFRIO, *Appellant*, v. MARY DONOFRIO, *Respondent*.[1]

*Morris B. Sachs* and *Colvin & Rhodes,* for appellant.
*P. O. D. Vedova,* for respondent.

[1]Reported in 8 P. (2d) 966.

PARKER, J.—The plaintiff, James Donofrio, commenced this action in the superior court for King county seeking a decree annulling the marriage which was duly solemnized between him and the defendant, Mary Donofrio. As ground for such relief, the plaintiff alleged that, at the time of their marriage, she was the wife of another man then living, which fact was then unknown to him. She answered by denial of her being the wife of another man at the time of their marriage; and by her cross-complaint alleged that she was lawfully married to the plaintiff, and alleged that he was guilty of cruel treatment towards her rendering her life burdensome; and prayed for a decree of divorce from him and for such property or alimony award against him as to the court might seem just.

The cause proceeded to trial upon the merits, and resulted in findings and judgment denying to the plaintiff the relief prayed for by him; and awarding to the defendant an interlocutory decree of divorce from the plaintiff, including an award to her against him in the sum of one thousand dollars in lieu of other property or alimony award. From this disposition of the case in the superior court, the plaintiff has appealed to this court.

We think the following is a sufficient summary of what appears to us, and evidently what appeared to the trial court, to be the outstanding, controlling facts of the case: On October 23, 1925, the marriage of appellant to respondent was duly solemnized according to law in the city of Seattle by a justice of the peace of King county. This is conceded. This is also evidenced by record and certificate in the manner required by law.

At that time appellant was a widower about sixty-five years old. At that time respondent was about fifty-five years old. They are both Italians, both hav-

ing been born in Italy. Both have lived in King county since sometime prior to the year 1915.

Respondent testified positively that she was never married to anyone but appellant, though she freely admitted that she lived with another man, an Italian, as his wife, for a number of years before and since coming to the United States and to King county, up to about the year 1920, when he left her and returned, as she was led to believe, to Italy. She never saw him thereafter.

She testified that he had repeatedly promised to marry her, but that he never did marry her. She let her acquaintances believe that she was married to him. Her justification for this and her continued association with him was, as she testified, "for the shame that I had, that I had a son;" referring to a son still living, the fruit of that association. After that man went away, she says, she heard that he had died, though she seems to have heard other rumors of his being alive, as some of her acquaintances did, though she did not know of his whereabouts in Italy. There was no evidence produced upon the trial pointing to her marriage to that man other than her own admissions and her living with him for a number of years prior to about 1920.

Just when appellant learned, as he claims, of her former association and her marriage to the man who abandoned her is not made plain by the evidence, but it was within two years after their marriage in 1925. The evidence warrants the conclusion that appellant continued to live with respondent as his wife after receiving such information.

About six months before the trial of this action, which occurred in April, 1931, respondent finally left appellant because, as she claims, of his cruel treatment of her. The evidence abundantly supports the

conclusion that she was fully justified in leaving appellant because of such cruelty.

Respondent is a very illiterate working woman. She can neither read nor write. She knows little else than hard labor in market gardening, in factory, and in her home. She labored hard in one or the other of these vocations constantly during the whole of the approximately five years she lived with appellant, the fruits of her labor contributing to the support of both of them. Appellant is a man of some business experience, having acquired real property of the value of several thousand dollars, which, however, at the present time yields a comparatively small income. This property is his separate property, being the property or the proceeds thereof acquired by him before his marriage to respondent.

The principal contention here made in behalf of appellant is that the trial court erred in finding that respondent was never married to the man who abandoned her about the year 1920. We have, as already noticed, conclusive proof of the marriage being legally solemnized between appellant and respondent on October 23, 1925. We have only circumstantial proof of a prior marriage between respondent and the man who abandoned her. We have her positive testimony that no such marriage ever occurred.

The controlling law of this case, it seems to us, is well stated in the text of 18 R. C. L. 427, as follows:

"Where a marriage has been shown, whether regular or irregular, the law raises a strong presumption of its legality, and the party who asserts its illegality must assume the burden of that issue. The law is so positive in requiring a party who attacks a marriage to take the burden of proving its invalidity that such requirement is enforced even when it requires the proof of a negative. This is based on the rule that where a negative is essential to the existence of a

right, the party claiming the right has the burden of proving such negative. The person having the burden of proof is required to make plain, against the constant pressure of the presumption of legality, the truth of law and fact that the marriage was not legal. The evidence to repel that presumption must be strong, distinct, and satisfactory. Thus if it is claimed that at the time of the marriage, one of the parties had a living spouse, it is incumbent upon him who attacks the marriage upon this ground to overcome the presumption of its validity, by establishing the former marriage, in all respects in conformity to law, and that the former spouse was living at the time that the second marriage was entered into, and undivorced."

The law seems to us to be equally well stated in the text of 38 C. J. 1328, as follows:

"In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage."

These texts are supported by abundant judicial authority cited thereunder. Among the numerous decisions supporting these texts, we note particularly the comparatively recent case of *Smith v. Smith*, 32 Ida. 478, 185 Pac. 67. Our own decisions are in harmony with this view of the law: *Goldwater v. Burnside*, 22 Wash. 215, 60 Pac. 409; *Thomas v. Thomas*, 53 Wash. 297, 101 Pac. 865.

We are of the opinion that the evidence does not preponderate against the conclusion reached by the trial court touching the question of respondent being the wife of another man at the time she was married

to appellant. We agree with the trial court that appellant did not prove with that degree of certainty required by law that respondent was ever married to another man. The marriage of appellant to respondent must therefore be held to be a legal marriage in all respects, in the light of the evidence produced in this case.

As to the proof of appellant's cruel treatment of respondent, we think there is but little room for argument against the justness of the decree awarding her a divorce. We entertain the same view as to the justness of the award in favor of respondent and against appellant in the sum of one thousand dollars, in lieu of other property or alimony award to which she may have been entitled. This branch of the case, we think, does not call for further discussion.

The decree is affirmed.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.