
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In re Parentage of | ) | |
| | ) | No. 40024-7-III |
| H.P.H. | ) | (Consol. with |
| | ) | No. 40828-1-III) |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |

STAAB, C.J. — This consolidated appeal arises from two related trial court rulings governing the parenting plan for H.P.H. between Kallee Knudson and David Hoodenpyl. After Knudson's incarceration, the superior court entered a modified parenting plan granting Hoodenpyl sole decision-making authority and limiting Knudson's contact with the child to two monitored telephone calls per week.

Knudson argues the court abused its discretion by relying primarily on her criminal convictions and incarceration rather than the statutory criteria in RCW 26.09.191, by entering unsupported findings, and by failing to identify specific harm to H.P.H. or explain how the restrictions imposed were reasonably calculated to address any such harm.

Knudson also appeals the trial court's denial of her subsequent petition for modification based on uncontroverted evidence that Hoodenpyl repeatedly failed to comply with the court-ordered telephone call provisions. We agree with Knudson on both issues and reverse.

BACKGROUND

Kallee Knudson and David Hoodenpyl are the parents of H.P.H. After the parties separated, a parenting plan was entered in 2017 naming Knudson as H.P.H's custodian, with joint decision-making authority between the parents. Under that plan, Hoodenpyl was granted residential time with H.P.H. every other weekend, certain holidays, and several weeks during the summer.

Knudson was later arrested and charged with 13 criminal offenses, including first degree attempted murder, first degree attempted assault, first degree attempted kidnapping, and two counts of criminal solicitation to commit assault for offering two people money to break into a woman's home, tie her up, sedate her, and take her phone. *State v. Knudson*, No. 38799-2-III, slip op. at 7, 14 (Wash. Ct. App. Feb. 6, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/387992_unp.pdf. A jury later found Knudson guilty on all charges except attempted murder, and she was sentenced to 20 years in prison.

In April 2023, Knudson petitioned the court for a major modification to the parenting plan, recognizing that her incarceration created a change in circumstances. She

2

requested that Hoodenpyl be named H.P.H.'s custodian but sought joint decision-making authority. She requested monthly weekend visitation in the corrections center, participation in family visitation events including a Mother's Day event, daily telephone contact, and weekly video visits.

In response, Hoodenpyl filed his own proposed parenting plan. He requested the court name him H.P.H.'s custodian, grant him sole decision-making authority, and limit Knudson's contact with H.P.H. to two telephone calls per week monitored by him. He asserted such limitations were warranted because Knudson assaulted someone and her 20-year prison sentence might harm H.P.H.'s best interests.

In June 2023, the court entered an agreed order finding adequate cause to change the parenting plan. The parties later submitted declarations supporting their respective parenting plans.

The court then issued a letter decision indicating that it agreed "entirely" with Hoodenpyl's position and proposed parenting plan. The court entered Hoodenpyl's proposed parenting plan, granting Hoodenpyl sole decision-making authority and limiting Knudson's contact with H.P.H. to two telephone calls per week monitored by Hoodenpyl. The parenting plan incorporated the letter decision as additional findings. The court did not enter the mandatory form "Final Order and Findings on Petition to Change a Parenting Plan or Custody Order."

Knudson filed a pro se motion for reconsideration, arguing the trial court failed to make express findings identifying and addressing harm to H.P.H. The court denied reconsideration and Knudson timely appealed.

After filing her notice of appeal, the trial court granted Knudson's request to subpoena the Washington State Corrections Center for Women to obtain the prison records of all her calls with Hoodenpyl. Knudson then moved to modify the parenting plan and sought an order to hold Hoodenpyl in contempt based on Hoodenpyl's interference with Knudson's telephone contact with H.P.H. In Knudson's memorandum, her attorney alleged that Hoodenpyl deliberately violated the parenting plan by rejecting or interrupting Knudson's calls to H.P.H., sent threatening and harassing messages to Knudson, and that since January 2024, Hoodenpyl refused to allow Knudson to have any contact with H.P.H. Knudson also submitted supportive exhibits containing the prison call logs and recordings of calls with Hoodenpyl.

Following a hearing on adequate cause, the court determined that Knudson failed to demonstrate adequate cause to modify the parenting plan. The court also declined to hold Hoodenpyl in contempt. Knudson timely appealed those orders as well.

We subsequently consolidated both appeals on Knudson's motion.

*Post-appeal developments*

Following her second appeal, Knudson alleged that Hoodenpyl continued to refuse to follow the court's order. As a result, Knudson filed another motion for contempt.

While the consolidated appeal was pending, Hoodenpyl moved to Florida with H.P.H. without a court order and with knowledge of an upcoming court review hearing. After Knudson filed her opening brief, the trial court entered findings and conclusions holding Hoodenpyl in contempt. However, the court also entered a temporary order and parenting plan allowing Hoodenpyl's relocation to Florida and setting a schedule for Knudson's two weekly calls with H.P.H. pending the outcome of this appeal.

ANALYSIS

1. MODIFICATION OF PARENTING PLAN

Knudson contends the trial court abused its discretion by restricting her decision-making authority and contact with H.P.H. without satisfying former RCW 26.09.191 (2021). She argues the trial court relied on her criminal convictions and incarceration rather than the statutory criteria, adopted conclusory findings unsupported by substantial evidence, failed to identify specific harm to H.P.H., and failed to explain how the restrictions imposed were reasonably calculated to address any identified harm.

We conclude the trial court abused its discretion because (1) its letter decision did not contain or reference any of the required statutory criteria, (2) it entered an assault finding that is not supported by the record and did not comply with the statutory screening requirement, and (3) its remaining findings are insufficient to permit meaningful review or are otherwise unsupported.

5

*A. Additional background*

The trial court entered the following findings as the reasons for its mandatory

limitations under former RCW 26.09.191(2)(a) (2021):

> **Neglect** - Kallee Ann Knudson substantially refused to perform her parenting duties for [H.P.H.]
>
> **Assault** - Kallee Ann Knudson (or someone living in that parent's home) has assaulted or sexually assaulted someone causing grievous physical harm, causing fear of such harm, or resulting in a pregnancy.

Clerk's Papers (CP) at 187, 191.

The trial court entered the following findings as the reasons for its discretionary

limitations under former RCW 26.09.191(3) (2021):

> **Neglect** - Kallee Ann Knudson neglected her parental duties toward [H.P.H.]
>
> **Emotional or physical problem** - Kallee Ann Knudson has a long-term emotional or physical problem that gets in the way of her ability to parent.
>
> **Abusive use of conflict** – Kallee Ann Knudson uses conflict in a way that may cause serious damage to the psychological development of [H.P.H.]

CP at 188, 191.

The court also incorporated its letter decision as additional findings in support of

the modified parenting plan. In the letter, the court found:

> Ms. Knudson, through her criminal behavior, has voluntarily absented herself from HPH's life. Ms. Knudson's criminal behavior was conducted without considering what potential impact that conduct would inflict upon HPH's emotional and psychological development. In order to grant Ms. Knudson's request the Court would essentially have to ignore the underling facts which resulted in Ms. Knudson's incarceration and pretend

6

that HPH was not victimized by her mother's actions. The Court is unwilling to do that.

CP at 194.

### B. Standards of review

In Washington, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002. In crafting and ordering a permanent parenting plan, the trial court exercises broad discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). "We review a [trial court's] parenting plan [decisions] for a manifest abuse of discretion." *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A manifest abuse of discretion occurs when the trial court's "'decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)). "A decision is manifestly unreasonable if, based on the facts and the applicable legal standard, the decision is outside the range of acceptable choices." *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001).

In addition, we review whether the trial court's "findings are supported by substantial evidence and whether those findings support the conclusions of law." *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). "Substantial evidence is

the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true." *Id*.

"Generally, where findings are required, they must be sufficiently specific to permit meaningful review." *In re LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). "While the degree of particularity required in findings of fact depends on the circumstances of the particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions." *Id.*

C.  *Legal principles*

RCW 26.09.260 sets forth the procedures and criteria for modifying a parenting plan" and contains varying standards depending on the parties' circumstances and the kind of modification requested. *In re the Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005); *see* RCW 26.09.260.  "These procedures and criteria limit a court's range of discretion." *Halls*, 126 Wn. App. at 606.  Thus, "a court abuses its discretion if it fails to follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria." *Id.*

Under former RCW 26.09.191(2)(a) (2021), a court was required to set restrictions on a parent's residential schedule if it found that parent engaged in: "(ii) physical, sexual, or a pattern of emotional abuse of a child; or (iii) a history of acts of domestic violence . . . or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy."

8

Under former RCW 26.09.191(3) (2021), a court had discretion to set restrictions on a parent's decision-making authority if it found any of the following factors:

    (a) A parent's neglect or substantial nonperformance of parenting functions;

    (b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;[1]

    . . . .

    (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development. Abusive use of conflict includes, but is not limited to, abusive litigation as defined in RCW 26.51.020. If the court finds a parent has engaged in abusive litigation, the

---

[1] RCW 26.09.004 defines "parenting functions" as:

those aspects of the parent-child relationship in which the parent makes decisions and performs functions necessary for the care and growth of the child. Parenting functions include:

(a) Maintaining a loving, stable, consistent, and nurturing relationship with the child;

(b) Attending to the daily needs of the child, such as feeding, clothing, physical care and grooming, supervision, health care, and day care, and engaging in other activities which are appropriate to the developmental level of the child and that are within the social and economic circumstances of the particular family;

(c) Attending to adequate education for the child, including remedial or other education essential to the best interests of the child;

(d) Assisting the child in developing and maintaining appropriate interpersonal relationships;

(e) Exercising appropriate judgment regarding the child's welfare, consistent with the child's developmental level and the family's social and economic circumstances; and

(f) Providing for the financial support of the child.

court may impose any restrictions or remedies set forth in chapter 26.51
RCW in addition to including a finding in the parenting plan. Litigation
that is aggressive or improper but that does not meet the definition of
abusive litigation shall not constitute a basis for a finding under this
section. A report made in good faith to law enforcement, a medical
professional, or child protective services of sexual, physical, or mental
abuse of a child shall not constitute a basis for a finding of abusive use of
conflict;

 . . . .

(g) Such other factors or conduct as the court expressly finds adverse to
the best interests of the child.

Any limitations or restrictions imposed under RCW 26.09.191 "must be

reasonably calculated to address the identified harm." *Katare v. Katare*, 125 Wn. App.

813, 826, 105 P.3d 44 (2004).

*D. Application*

Knudson challenges each of the trial court's findings in support of the limitations

and restrictions imposed. We address each challenge in turn.

    *i.      The trial court's letter decision*

Knudson argues the trial court did not comply with the statutory requirements

governing parenting plan restrictions because the letter decision, and the court's reliance

on her criminal convictions and incarceration, were insufficient to support the limitations

imposed. We agree.

It is an abuse of discretion for the trial court to modify a parenting plan for reasons

other than the statutory criteria. *Halls*, 126 Wn. App. at 606.

Although the trial court could consider Knudson's incarceration and non-assaultive criminal conduct as part of the overall circumstances when evaluating whether statutory limiting factors applied, those considerations alone are not factors listed in former RCW 26.09.191(2)(a) or (3) (2021). And while former RCW 26.09.191(3)(g) (2021) permitted the trial court to impose limitations based on other conduct, such as criminal conduct, the statute required the court to "expressly" find the conduct "adverse to the best interests of the child." The trial court's letter does not reflect such an express best interests finding or otherwise connect the criminal conduct or incarceration to another statutory factor. The trial court therefore abused its discretion to the extent it imposed limitations based on the rationale stated in its letter decision.

ii. *Assault finding and failure to order screening*

Knudson argues the trial court's assault findings are unsupported by substantial evidence.

Knudson was convicted of attempted assault and solicitation of another to commit assault, among her other convictions. Those convictions do not establish that Knudson "has assaulted or sexually assaulted someone causing grievous physical harm [or] causing fear of such harm," as the court found. CP at 187. Nor do Knudson's convictions constitute "assault" within the plain language of former RCW 26.09.191(2)(a)(ii) (2021). Accordingly, substantial evidence does not support the assault finding.

11

Relatedly, Knudson argues that the trial court failed to comply with former RCW 26.09.191(4) (2021) by failing to order a screening of both parties after making a finding of assault. We agree.

Former RCW 26.09.191(4) (2021) required that, "[i]n cases involving allegations of limiting factors under subsection (2)(a)(ii) and (iii) of this section, both parties shall be screened to determine the appropriateness of a comprehensive assessment regarding the impact of the limiting factor on the child and the parties."

Here, the trial court made its assault finding under former RCW 26.09.191(2)(a)(iii) without ordering a screening of the parties. Thus, the trial court abused its discretion by failing to comply with former RCW 26.09.191(4) (2021). *See Halls*, 126 Wn. App. at 606.

### iii. Remaining findings

Knudson argues the trial court's remaining findings are unsupported by substantial evidence. For several reasons, we conclude that the findings are insufficient for appellate review.

First, the trial court's neglect findings are insufficient. The court found both that Knudson "substantially refused to perform her parenting duties" and "neglected her parental duties" toward H.P.H. but did not identify what facts supported either finding. CP at 187-88. Without findings identifying which parenting duties were refused or

12

neglected and what evidence supports those findings, we cannot meaningfully review whether the neglect findings are supported by substantial evidence.

The trial court's "emotional or physical problem" finding suffers from a similar defect. The trial court found Knudson has a "long-term" emotional or physical problem that interferes with her ability to parent, but it did not identify the nature of the problem, why it was long term, or what parenting functions (as defined in former RCW 26.09.004 (2021)) it interfered with. As written, the court's finding is insufficient for our review.

Finally, the court's abusive use of conflict finding is likewise insufficient. The court did not specify what conduct constituted abusive use of conflict or how it created a danger of serious damage to H.P.H.'s psychological development. As entered, the finding largely parrots the first sentence of former RCW 26.09.191(3)(e) without identifying specific conduct.

Hoodenpyl argued in his declaration that Knudson "abuses the legal system to get what she wants" and engages in "abusive use of conflict." CP at 118. In support of his claim, Hoodenpyl pointed to: (1) four antiharassment protection orders Knudson sought against him in 2016 and 2017, (2) a lawsuit Knudson filed against Central Washington University under the public records act, ch. 42.56 RCW, (3) the protection order obtained by the victim in Knudson's criminal case, and (4) a domestic violence protection order Knudson sought against the victim's husband.

To the extent the trial court relied on these instances of litigation as the basis for its finding of abusive use of conflict, its finding is still insufficient. Abusive use of conflict can include abusive litigation. Former RCW 26.09.191(3)(e) (2021). But the trial court did not specify whether its abusive use of conflict finding was based on abusive litigation by Knudson, and if so, which definition of "abusive litigation" applied based on the evidence under RCW 26.51.020(1). Plainly, the trial court could not have found "abusive litigation" because that would require a finding that Knudson committed domestic violence against Hoodenpyl. *See* former RCW 26.51.020(1)(a)(ii) (definition of "abusive litigation" requires a litigating party to have been found by a court to have committed violence against the other party). The trial court made no such domestic violence finding. As a result, this finding is insufficient for our review.

All considered, each of the trial court's findings was insufficient for our review or not supported by substantial evidence.

### iv. Failure to make findings related to harm

Finally, Knudson argues the trial court failed to identify harm to H.P.H. and failed to explain how the restrictions imposed were reasonably calculated to address any such harm. We agree in part.

"Any limitations or restrictions imposed must be reasonably calculated to address the identified harm." *Katare*, 125 Wn. App. at 826.

14

Here, the letter decision frames the court's rationale in terms of Knudson's criminal behavior and incarceration rather than identifying a harm to H.P.H. caused by continued contact with Knudson. And while the parenting plan lists statutory labels of harm (neglect, assault, emotional or physical problem, and abusive use of conflict), the court did not make findings explaining (1) what specific harms to H.P.H. those factors reflected and (2) how the particular restrictions that were imposed—eliminating in-person visits, denying decision-making authority, and limiting contact to two monitored calls per week—were tailored to address those harms.

  v.  *Remedy*

Where a trial court abuses its discretion in crafting a parenting plan, the remedy is generally to reverse and remand for further proceedings. *See*, *e.g.*, *In re Marriage of Watson*, 132 Wn. App. 222, 236-39, 130 P.3d 915 (2006); *Halls*, 126 Wn. App. at 611-12.

Having concluded the trial court abused its discretion, we reverse the entry of the final parenting plan and remand for further modification proceedings.

2. KNUDSON'S SUBSEQUENT PETITION TO MODIFY BASED ON CONTEMPT

Knudson contends the trial court abused its discretion by declining to hold a full hearing on her petition to modify the parenting plan. She argues she presented specific, documented factual allegations showing Hoodenpyl repeatedly failed to facilitate the court-ordered calls with H.P.H., which, if proved, would establish a substantial change in

circumstances and detriment to the parent-child relationship sufficient to warrant modification. By refusing to find adequate cause and declining to set a hearing, Knudson asserts the trial court abused its discretion. We agree.

### A. Additional background

After she filed her initial notice of appeal, Knudson moved to modify the parenting plan and sought an order holding Hoodenpyl in contempt based on Hoodenpyl's alleged interference with Knudson's telephone contact with H.P.H.

In support, Knudson's counsel alleged in her declaration that Hoodenpyl deliberately violated the parenting plan by rejecting or interrupting a majority of Knudson's calls to H.P.H., sent threatening and harassing messages to Knudson, and that since January 2024 Hoodenpyl refused to allow Knudson to have any contact with H.P.H. She submitted a series of supportive exhibits, including DOC[2] call logs and recordings documenting the allegations. Among the exhibits was a recorded phone call in which Hoodenpyl tells Knudson that H.P.H. "hasn't wanted to answer the phone lately." Exhibit C. Knudson responded, explaining that Hoodenpyl was required to follow the parenting plan, to which Hoodenpyl replied, "I really don't care. I have no problem going to court to tell and being like I'm not going to force [H.P.H.] to answer the phone." Exhibit C.

---

[2] Department of Corrections.

Knudson sought a modification of the residential schedule under former RCW

26.09.260(1), (2), and (5)(a) (2009) requesting: joint-decision authority making with

Hoodenpyl; an in-person visit on Mother's Day and additional in-person visits during the

year; four parent-child events hosted by DOC; at least one unmonitored video visit and

five unmonitored phone calls per week; and permission for H.P.H. to communicate with

Knudson through the DOC portal by sending messages, pictures, and videos. In support,

she alleged a substantial change in circumstances, that her requested modification was in

H.P.H.'s best interests, and that H.P.H.'s present environment was detrimental to her

physical, mental, or emotional health because Hoodenpyl's conduct was preventing

communication and undermining the parent-child bond.

Hoodenpyl opposed the motion, arguing that Knudson failed to meet the standards

for modification under RCW 26.09.260 because she did not show (1) a substantial change

in circumstances, (2) that the benefit of change outweighed the detriment of disruption,

(3) that Hoodenpyl had been held in contempt twice in the last three years as required for

certain modifications, and (4) parental alienation.

Following an adequate cause hearing, the trial court determined Knudson failed to

demonstrate adequate cause to modify the parenting plan and declined to hold Hoodenpyl

in contempt. Although the court acknowledged Hoodenpyl had not complied with the

parenting plan, it stated only that "we need the court order complied with." *See* 2RP at

17

55-56. The court made no oral or written findings explaining its denial of adequate cause.

### B. Standard of review and legal principles

We review a trial court's adequate cause determination for an abuse of discretion. *See In re Parentage of Jannot*, 149 Wn.2d 123, 126, 65 P.3d 664 (2003). Because changes in residence are highly disruptive to children, we employ a strong presumption against modification of a parenting plan. *Halls*, 126 Wn. App. at 607.

"Parenting plan modifications require a two-step process set out in RCW 26.09.260 and .270. First, a party moving to modify a parenting plan must produce an affidavit showing adequate cause for modification before the court will permit a full hearing on the matter." *In re Marriage of Zigler & Sidwell*, 154 Wn. App. 803, 809, 226 P.3d 202 (2010). "This threshold determination requires [the] petitioner to set forth specific factual allegations, which if proven would permit [the] court to modify the plan under RCW 26.09.260." *Bower v. Reich*, 89 Wn. App. 9, 14, 964 P.2d 359 (1997).

Under former RCW 26.09.260(1) (2009), the trial court lacked authority to modify a parenting plan unless it found, "upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." In applying those standards, a court was required to

18

maintain the residential schedule in the parenting plan unless "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." Former RCW 26.09.260(2)(c) (2009).

Separately, under former RCW 26.09.260(5) (2009), the trial court was permitted to order adjustments to the residential aspects of the parenting plan "upon a showing of a substantial change in circumstances of either parent or of the child . . . if the proposed modification is only a minor modification in the residential schedule that does not change the residence the child is scheduled to reside in the majority of the time and: (a) Does not exceed twenty-four full days in a calendar year."

A substantial change of circumstances must be "grounded upon facts occurring since entry of the prior . . . plan or were unknown to the superior court at the time it entered that prior . . . plan." *In re Marriage of Hoseth*, 115 Wn. App. 563, 570, 63 P.3d 164 (2003). "The information considered in deciding whether a hearing is warranted should be [information] that was not considered in the original parenting plan." *Jannot*, 110 Wn. App. at 25.

"An effort by one parent to terminate the other parent's relationship with a child can be considered detrimental to the child, and modification based on such behavior is appropriate." *Velickoff v. Velickoff*, 95 Wn. App. 346, 355, 968 P.2d 20 (1998). In *Velickoff*, this court affirmed a trial court's decision to modify a parenting plan under

19

RCW 26.09.260(2)(c) after one parent interfered with the other parent's court ordered phone calls. 95 Wn. App. at 358.

If adequate cause is shown, the court will then move to the second step: a full hearing on the petition. *Zigler*, 154 Wn. App. at 809.

Where a trial court abuses its discretion by finding there is not adequate cause to hold a hearing on a parent's petition to modify a parenting plan, we generally will reverse and remand. *See In re Marriage of MacLaren*, 8 Wn. App. 2d 751, 777-78, 440 P.3d 1055 (2019).

### C. Application

Knudson's argument concerns the first step of the analysis. We conclude the trial court abused its discretion by failing to find adequate cause because Knudson presented specific, documented factual allegations that, if proved, would permit the court to modify the parenting plan under RCW 26.09.260.

Knudson submitted call logs and recordings from DOC demonstrating Hoodenpyl repeatedly refused to accept or facilitate her court-ordered calls with H.P.H. She also provided a recorded call in which Hoodenpyl stated he did not care what the court order required and he would not force H.P.H. to answer. These allegations concern conduct occurring after entry of the August 2023 parenting plan and thus were unknown to the court at the time it entered the prior plan.

20

If proved, Hoodenpyl's repeated refusal to comply with the court-ordered communication provisions would constitute a substantial change in circumstances and could support modification to protect the parent-child relationship and serve H.P.H.'s best interests. *See Velickoff*, 95 Wn. App. at 355. Yet despite acknowledging that Hoodenpyl had not complied with the parenting plan, the trial court denied adequate cause without explaining why Knudson's documented allegations were insufficient to warrant a full hearing.

Because Knudson met the threshold burden of alleging specific facts that, if proved, would permit modification under RCW 26.09.260, the trial court abused its discretion in denying adequate cause. We therefore reverse and remand for the trial court to hold a hearing on Knudson's petition.

3. ATTORNEY FEES

Knudson requests attorney fees under RCW 26.09.140 and RAP 18.1(a). RCW 26.09.140 provides the court discretion to award fees and costs to either party in a dissolution proceeding "after considering the financial resources of both parties." However, this statute presupposes a marital relationship as a condition for the right to an award of attorney fees under the statute. *See State ex rel. Davis v. Superior Ct. for King County*, 200 Wash. 670, 672, 94 P.2d 478 (1939).

21

Knudson's case does not stem from a dissolution proceeding as Knudson and Hoodenpyl were never married.  Thus, we do not have authority to award fees under this statute, and we deny Knudson's request for attorney fees.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Cooney, J.

22